Joseph L. **FRIEDMAN** et al., Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent-Appellee.

No. 19256.

United States Court of Appeals Sixth Circuit.

Jan. 23, 1970.

John Kennedy Lynch, Cleveland, Ohio, for appellants.

Stephen H. Hutzelman, Atty., Dept. of Justice, Washington, D. C., for appellee; Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Bennet N. Hollander, Dept. of Justice, Washington, D. C., on brief.

Before WEICK and McCREE, Circuit Judges, and BROWN, District Judge.*

PER CURIAM.

This is an appeal from a redetermination by the Tax Court that the appellant, Joseph L. Friedman, a physician, is liable for additional income tax for the years 1956 through 1962, and that he is also liable for the fraud penalty for these years. This redetermination by the Tax Court resulted from a trial in which the Commissioner relied upon net worth computations to show that the appellant had substantially understated his income during the years in question.

It is the appellant's contention that his starting net worth was not correctly established because the amount of cash on hand for which he was given

---

* Honorable Bailey Brown, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation.

credit in that net worth computation was too small. He further contends that the Internal Revenue agents did not follow leads pointing to nontaxable sources of assets, and that he was erroneously charged, in the net worth computation, with monies which in reality belonged to his daughters and mother.

To the extent that these contentions challenge the Tax Court's findings of fact, this Court must affirm such findings if they are supported by substantial evidence and are not clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Clayton v. Commissioner of Internal Revenue, 245 F.2d 238 (6th Cir. 1957).

With respect to the cash on hand at the beginning of the period involved, the Tax Court found, as appellant contended, that he had received a cash gift in 1952 of $42,000 from his father and had, beginning in 1947, received cash gifts from his father-in-law of approximately $250 a month, or a total of about $27,000. It further found that of the $27,000 received from the father-in-law, for the support of the retarded daughter, none of this had been expended for that purpose, a finding which is also favorable to the appellant. The Tax Court found, however, that the appellant did not have this entire $69,000 in cash on hand at the beginning of the period, because appellant had expended about $48,049.61 for the construction of his new home, leaving, from the $69,000, $20,950.39 in cash. This is the amount that the Tax Court found that appellant had at the beginning of the involved period. We agree with the Tax Court that the most likely source of the money paid on the house was this cash hoard because, as the record shows, there was no other source available to appellant; at that time, appellant had been ill, his income was decreased, and he sold no property to produce this money.

■ With respect to following the leads, the only contention is that the Internal Revenue Service should have talked to the mother and mother-in-law

of the appellant. Actually, however, not long after the investigation had started, the investigating agent sought to interview the mother-in-law and was told by appellant's lawyer that she was out of the city, that she was ill, and that the agent should not talk to her. Also, by that time, the mother had become senile and was declared incompetent. Properly applying the test of Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L. Ed. 150 (1954), the Tax Court found that, under these circumstances, the Internal Revenue agents had sufficiently investigated all leads, with which we agree.

■ With respect to the contention that monies belonging to the daughters and mother of appellant were incorrectly attributed to appellant in the net worth computation, the view of the Tax Court was, with which we agree, that appellant's earnings were the most likely source from which these monies, which were in many savings accounts, could have come. Appellant's counsel argues that title to these accounts was in the daughters and mother and points out that the joint account of appellant and his mother was taxed in her estate under Ohio law when she died. But, for present purposes, it is not important where the title to these accounts was; the important point is, as the Tax Court found, that these accounts were derived from taxable income of the appellant and therefore should be inserted in his net worth computation to determine his true taxable income for the years involved.

■ With respect to the fraud penalties, we agree with the Tax Court that, among other things, the failure of appellant to keep adequate records, the omission from his returns throughout the period involved of large amounts of taxable income, and the purchase of securities with checks from patients and the deposit of such checks in the various savings accounts constitutes clear and convincing proof of fraud in each of the years.

The decision of the Tax Court is therefore affirmed.