T.C. Memo. 1995-542


UNITED STATES TAX COURT


GREGORY ALBERICO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21293-93.          Filed November 16, 1995.


<u>James W. Faber</u>, for petitioner.

<u>William R. Davis, Jr.</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FAY, <u>Judge</u>:  By notice of deficiency dated June 30, 1993, respondent determined deficiencies in petitioner's income tax for the taxable years 1990 and 1991, in the amounts of $21,478 and $8,926, respectively, and accuracy-related penalties for the

taxable years 1990 and 1991 under section 6662(a)[1].  The issues for decision are:

1. Whether petitioner is entitled to deductions for gambling losses during the tax year 1990.  We hold that he is not.

2. Whether petitioner failed to report gambling winnings for the tax year 1991.  We hold that he did.

3. Whether a penalty should be imposed against petitioner under section 6662.  We hold that it should.

                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioner resided in Broomfield, Colorado.

Petitioner is a professional gambler.  In 1972, after serving three tours of duty in Vietnam, petitioner was stationed as the Post Adjutant of Rocky Mountain Arsenal in Denver, Colorado.  It was at this time that petitioner's gambling activity started.  By 1977, petitioner had developed a gambling addiction.  Petitioner was discharged from the military in 1978 after being convicted of stealing Government property to support his gambling addiction.[2]  Petitioner was incarcerated twice for

---

[1]All section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated.

[2]Petitioner testified that he declared the money he received from the sale of the stolen Government property on his 1977 Federal income tax return.

theft of Government property, once from 1980 to 1984 and again from 1986 to 1989.

During 1990 and 1991, the years in issue, petitioner frequented Colorado dog racing tracks and played the slot machines in Las Vegas. For 1990 and 1991, petitioner reported his gambling winnings as $87,619 and $203,567, respectively, and his gambling losses as $78,864 and $187,000, respectively. The winnings reported on petitioner's Federal income tax returns for 1990 and 1991 are in excess of the amounts stated as reported income for gambling winnings[3] on petitioner's Forms W-2G.[4]

_____

[3]For 1990 and 1991, petitioner reported $87,619 and $203,567 respectively as gambling winnings. However, petitioner's Form W-2G income statements only showed petitioner winning $21,800.70 and $92,625.70, respectively.

[4]The payer of proceeds from a wager must report gambling winnings on Form W-2G if a taxpayer receives:

    (1)  $600 or more in gambling winnings from:

        (a)  Horse racing, dog racing, jai alai, state lotteries, and other wagering transactions * * * [in which] the winnings are at least 300 times the amount of the wager; or

        (b)  Lotteries, raffles, sweepstakes, wagering pools, or drawings, such as those held by churches or civic organizations;

    (2)  $1,200 or more of gambling winnings from bingo or slot machines; or

    (3)  $1,500 or more of * * * [winnings] from keno.

Instructions to Recipient for IRS Form W-2G, Statement for Recipients of Certain Gambling Winnings.

Under the general rule of sec. 3402(q) certain gambling winnings are subject to withholding:

    Sec. 3402(q) Extension of Withholding to Certain Gambling Winnings.--

(continued...)

Petitioner testified that he reported income in excess of the

Form W-2G for both years in issue based upon his personal records

---

[4](...continued)

(1) General rule.--Every person, including the Government of the United States, a State, or a political subdivision thereof, or any instrumentalities of the foregoing, making any payment of winnings which are subject to withholding shall deduct and withhold from such payment a tax in an amount equal to 20 percent of such payment.

\*       \*       \*       \*       \*       \*       \*

(3) Winnings which are subject to withholding.- For purposes of this subsection, the term "winnings which are subject to withholding" means proceeds from a wager determined in accordance with the following:

(A) In general.--Except as provided in subparagraphs (B) and (C), proceeds of more than $1,000 from a wagering transaction, if the amount of such proceeds is at least 300 times as large as the amount wagered.

(B) State-conducted lotteries.--Proceeds of more than $5,000 from a wager placed in a lottery conducted by an agency of a State acting under authority of State law, but only if such wager is placed with the State agency conducting such lottery, or with its authorized employees or agents.

(C) Sweepstakes, wagering pools, certain parimutuel pools, jai alai, and lotteries.-- Proceeds of more than $1,000 from--

(i) a wager placed in a sweepstakes, wagering pool, or lottery (other than a wager described in subparagraph (B)), or

(ii) a wagering transaction in a parimutuel pool with respect to horse races, dog races, or jai alai if the amount of such proceeds is at least 300 times as large as the amount wagered.

\*       \*       \*       \*       \*       \*       \*

(5) Exemption for bingo, keno, and slot machines.-- The tax imposed under paragraph (1) shall not apply to winnings from a slot machine, keno, and bingo.

of his gambling activities. However, petitioner produced no records showing his gambling results for 1990, except for his 1990 Federal income tax return. For 1991, petitioner presented dog racing programs covering part of the period during which he gambled at the dog tracks.

Petitioner testified that he had recorded in a notebook how much he bet on each race in 1990, but, after his divorce, his ex-wife or her new husband threw away all of the gambling records that petitioner had stored in their house. Petitioner offered no evidence at trial to support this story.

For 1991, petitioner stated that he maintained two sets of records. Petitioner's main set of records consisted of his daily race programs in which he would record how much money he had to bet that day, how much money he bet on each race, and how much he won or lost. The second set of records was a ledger in which petitioner recorded his losses. At trial, petitioner stated that his 1991 ledger was inaccurate and was prepared solely for the audit with respondent.

In late 1992, the Internal Revenue Service, after examining petitioner's race programs for January to June of 1991, requested to examine petitioner's race programs for the second half of 1991. Petitioner testified that he and his daughter delivered the race programs to a gentleman handing out tax forms in the lobby of the Internal Revenue Service office building and asked the man to give the programs to Mr. Thomas Ellison, the auditor

handling his case. Petitioner did not ask for nor receive a receipt for these documents. Several weeks later, petitioner received a phone call from his accountant informing him that Mr. Ellison could not locate the programs that petitioner claims to have delivered to the Internal Revenue Service. Petitioner contends that the Internal Revenue Service lost his records when they remodeled and moved the tax auditor's office to a different part of the IRS building. Neither party introduced evidence that petitioner's programs were ever found.

While petitioner claims that he and an adult daughter gave a complete set of records to respondent, nothing in the record corroborates it. Additionally, petitioner's daughter never testified, nor did the gentleman handing out the tax forms in the lobby of the Internal Revenue Service office building.

Based on the programs for January to June of 1991 that respondent had received, respondent extrapolated the amount of payouts of less than $1,000 ("small" winnings) for the period without programs (July to December 1991) by applying the ratio of "small" winnings to Form W-2G winnings from the period with pro-grams, to the Form W-2G winnings. Respondent then added this amount, plus the winnings reported on the Form W-2G, the "small" winnings reported in petitioner's programs, and petitioner's slot machine winnings to determine petitioner's total gambling winnings.

- 7 -

Likewise, based on the ratio of losses-to-winnings reflected in petitioner's dog racing programs for January to June of 1991, respondent determined that, for the additional gambling winnings determined by extrapolation, petitioner was entitled to additional gambling losses, and respondent made such an adjustment in the notice of deficiency.

OPINION

1990 Taxable Year

Petitioner claimed $87,619 in gambling winnings and $78,864 in gambling losses on his 1990 return.  After audit, respondent disallowed his claimed gambling losses in the notice of deficiency.  Petitioner bases his challenge to the 1990 deficiency on his claim for the Court to estimate his losses, citing Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).

Taxpayers have the burden of showing that they are entitled to a gambling loss deduction.  Norgaard v. Commissioner, 939 F.2d 874, 878 (9th Cir. 1991), affg. in part, revg. in part T.C. Memo. 1989-390.  Section 6001 requires taxpayers to keep adequate records to substantiate their income and deductions.  See also sec. 1.6001-1(a), Income Tax Regs.  Absent production of adequate records sustaining a taxpayer's claimed losses, taxpayers are not entitled to any gambling deduction.  Norgaard v. Commissioner, 939 F.2d at 878; Conley v. Commissioner, T.C. Memo. 1992-215.  However, under the rule of Cohan v. Commissioner, supra at 543, when a taxpayer fails to keep records, but a court is convinced

that deductible expenditures were made, it "should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making."

Here, the parties do not dispute that petitioner failed to produce any documents to support his claimed gambling losses for 1990.  Rather, petitioner testified that, at one time, he had records, but either his ex-wife or her new husband had thrown them away.  Thus, petitioner tries to fit within the framework of the rule of Cohan by laying the blame at the feet of his ex-wife.  However, petitioner failed to call his ex-wife to testify.  Thus, the Court did not have the opportunity to corroborate petitioner's story.

Unless the court has some proof that the taxpayer is entitled to some deduction, the taxpayer should not be granted relief. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).  Additionally, where "'there are no reliable figures from which to calculate or extrapolate a reasonable estimate of * * * [a taxpayer's] losses'", no such adjustment is warranted.  Metas v. Commissioner, T.C. Memo. 1982-36 (quoting Plisco v. United States, 306 F.2d 784, 787 (D.C. Cir. 1962)).  Here, the only evidence presented to support petitioner's losses reported on his 1990 Federal income tax return was petitioner's own testimony.  Thus, although it logically follows that petitioner must have sustained some losses considering his substantial gambling activity, the complete absence of any documentation or other

credible corroborating evidence concerning his gambling activities affords the Court no opportunity to estimate petitioner's alleged sustained losses under the rule of Cohan v. Commissioner, supra.  Accordingly, we hold that petitioner has failed to carry his burden of proof with respect to the gambling loss substantiation issue and that his gross gambling winnings are taxable as determined by the Commissioner for the year in question.

1991 Taxable Year

On his 1991 return, petitioner reported $203,567 in gambling winnings and $187,000 in losses.  Attached to the return were Forms W-2G reflecting $92,626[5] in dog track winnings won by petitioner and reported to respondent by the tracks.  After audit, respondent determined that petitioner had failed to report $137,946 in gambling winnings.  Respondent also made a correlative adjustment, increasing petitioner's gambling losses by $104,478.  Petitioner challenges the 1991 deficiency on the grounds that respondent had no basis to suspect that petitioner earned more income than reported, respondent inappropriately and incorrectly applied extrapolation, and respondent is unable to establish, using a net worth method or any other method, that petitioner made or lost more than he reported on his 1991 Federal income tax return.

---

[5]The parties both stated that petitioner's Forms W-2G attached to his 1991 Federal income tax return totaled $95,707 in dog track winnings.  However, the Forms W-2G attached to petitioner's 1991 Federal income tax return received into evidence totaled $92,625.70.

Petitioner claims that for the 1991 tax year, he provided respondent a complete set of original dog racing programs to substantiate the income reported on his Federal income tax return but that some of the programs were lost by respondent.[6] However, at trial, both of respondent's tax auditors who were working on petitioner's audit, testified that they never received the programs for the second half of 1991. Petitioner failed to present any evidence to support his claim that he delivered these programs to respondent. He presented no receipt for the programs and offered no testimony or other evidence to corroborate his story. Thus, petitioner presented an incomplete picture of his 1991 gambling activities.

When a taxpayer fails to maintain adequate books and records, the Commissioner is authorized to reconstruct income by any reasonable means which will clearly reflect income. Holland v. United States, 348 U.S. 121, 130-132 (1954); Conforte v. Commissioner, 74 T.C. 1160, 1181 (1980), affd. in part and revd. in part 692 F.2d 587 (9th Cir. 1982). Extrapolation is a permissible method of proving the volume of unreported wagers. Gordon v. Commissioner, 572 F.2d 193, 195 (9th Cir. 1977); Carson v. United States, 560 F.2d 693 (5th Cir. 1977).

---

[6]Petitioner also provided respondent with a ledger showing petitioner's net winnings or losses for each day that he gambled, and the cumulative running total of petitioner's net winnings or losses for the year. However, petitioner admitted both at the audit and at trial that the ledger was inaccurate.

Here, petitioner failed to maintain adequate records to determine his correct tax liability for the 1991 taxable year. In order to determine petitioner's correct tax liability, respondent reasonably used petitioner's dog racing programs for the first half of 1991 to reconstruct, through extrapolation, petitioner's gambling winnings and losses for 1991. Accordingly, we hold that petitioner has failed to substantiate the accuracy of his 1991 Federal income tax return and that his net gambling winnings are taxable as determined by the Commissioner for the year in question.

## Negligence Penalty

Respondent determined that petitioner was negligent under section 6662(a) in claiming a deduction for gambling losses for the tax year 1990 and in failing to properly report his gambling income for the tax year 1991. For purposes of section 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" includes any careless, reckless or intentional disregard. Sec. 6662(c). Negligence frequently takes the form of failure to report income or overstatement of deductions. Marcello v. Commissioner, 380 F.2d 509 (5th Cir. 1967); Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Beus v. Commissioner, 261 F.2d 176 (9th Cir. 1958). Understatement of income or overstatement of deductions often reflects the inadequacy of the taxpayer's

records, which is in itself a basis for imposing the penalty.  A taxpayer is required to maintain records sufficient to establish information provided on a tax return.  Sec. 1.6001-1(a), Income Tax Regs.   Therefore, failure to keep adequate records is evidence not only of negligence, but of intentional disregard of the regulations.  Marcello v. Commissioner, supra, Magnon v. Commissioner, 73 T.C. 980 (1980).  Here, the taxpayer failed to maintain records sufficient to establish the amount of gambling winnings and losses on both his 1990 and 1991 Federal income tax returns.  Accordingly, we hold for respondent.

Decision will be entered

under Rule 155.