WILLIE L. WAGONER and BEVERLY E. WAGONER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wagoner v. Commissioner
Docket No. 42356-84.
United States Tax Court
T.C. Memo 1987-614; 1987 Tax Ct. Memo LEXIS 659; 54 T.C.M. (CCH) 1332; T.C.M. (RIA) 87614; December 17, 1987. Willie L. Wagoner and Beverly E. Wagoner, pro se. James B. Martin, Jr., for the respondent. JACOBS
MEMORANDUM *660 FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in petitioners' Federal income taxes for 1980 in the amount of $ 6,760. The sole issue for decision is whether petitioners had gambling winnings in 1980 in excess of gambling losses and, if so, the amount of such excess. FINDINGS OF FACT Petitioners, Willie L. Wagoner (hereinafter Mr. Wagoner) and Beverly E. Wagoner (hereinafter Mrs. Wagoner), husband and wife, resided in Denver, Colorado, at all times relevant hereto, including the time they filed their petition. Petitioners were married in 1970; both were employed by the Denver Public School System. At some time in 1975, Mr. Wagoner became unemployed and began to gamble on a full-time basis. He spent seven days a week at the dog racing and horse racing tracks. [1] He derived the funds for his gambling pursuits from his wife's teaching salary, from loans taken by his wife from her credit union, [2] and from loans from friends. Mr. Wagoner's gambling activities had an adverse impact on his financial and marital status. *661 During 1980, Mr. Wagoner's gross winnings at the racetracks amounted to at least $ 17,936, as evidenced by Form W-2G (Statement for Certain Gambling Winnings) and Form 5754 (Statement by Persons(s) Receiving Gambling Winnings) which were issued in connection with such winnings. [3] Petitioners reported $ 14,093 in winnings on their 1980 income tax return; they also claimed a deduction for gambling losses on Schedule A of their return in the same amount, i.e., $ 14,093. *662 Mr. Wagoner used some of his gambling winnings for personal items such as food and clothing. Mr. Wagoner claimed that he maintained a diary notebook of his gambling activities and that he would enter into this diary the amount of money he took to the track each night, the amount he won or lost, and the amount with which he left the track. He did not keep track of all wagers made but rather only the trifecta [4] wagers he placed. He testified that he placed some of the losing tickets in his notebook. He further claimed that he kept such records in response to a previous audit of taxable years prior to the year now in issue. Petitioners timely filed their 1980 income tax return. Mrs. Wagoner prepared the return; she testified, however, that she did not use the diary her husband claimed to have kept in computing his income or losses from gambling. Instead, she reported losses on the return to the extent of her husband's winnings, as she felt that he could not have won more than he lost. [5]
*663 Petitioners did not produce any documentary evidence of Mr. Wagoner's 1980 gambling income or losses. They claim that they forwarded Mr. Wagoner's diary and associated betting tickets, along with their 1980 income tax return, to respondent's Ogden, Utah Service Center. However, petitioners kept no copies of the tax return, diary, related tickets, or other documents. [6]
Petitioners' return was audited in March of 1983. At that time, petitioners' case file, which was examined by respondent's auditing agent, did not contain the diary or losing tickets. Respondent's agent did not, however, initiate a search at the Ogden, Utah Service Center for the documents, as it was respondent's customary administrative practice to place such documents in a taxpayer's case file when it was forwarded to the local District office for audit. Respondent's agent was unable to obtain further verification or substantiation from Mr. Wagoner of his gambling activities. In his notice of deficiency, respondent determined that petitioners *664 had failed to include in their 1980 income $ 3,844 of gambling winnings. In addition, respondent disallowed the $ 14,093 claimed by petitioners as gambling losses for lack of substantiation. OPINION Gambling winnings are includible in gross income. Section 61. [7] Gambling losses are deductible only to the extent of the taxpayer's gambling winnings during the same taxable year. Section 165(d); section 1.165-10, Income Tax Regs.; Gajewski v. Commissioner,84 T.C. 980, 982 (1985); Offutt v. Commissioner,16 T.C. 1214 (1951). Respondent determined that petitioners failed to include $ 3,844 of gambling winnings in income in 1980, and that they failed to substantiate gambling losses in the amount of $ 14,093. Petitioners bear the burden of proving error *665 in respondent's determination. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Moreover, petitioners must prove that the alleged losses were actually sustained. This is a factual issue which must be determined on the basis of the evidence presented. Green v. Commissioner,66 T.C. 538, 545 (1976). To support his determination with regard to Mr. Wagoner's 1980 unreported gambling income, respondent produced Forms W-2G and 5754 indicating that $ 17,936 in winnings were paid to Mr. Wagoner in 1980, or $ 3,844 more than petitioners reported. Petitioners failed to produce any evidence to refute respondent's determination. We, therefore, sustain respondent's determination with respect to his amount of unreported income. [8]
Respondent also determined that petitioners failed to substantiate *666 gambling losses in the amount of $ 14,093, as claimed on their 1980 return. Petitioners contend that respondent was provided with such substantiation in the form of Mr. Wagoner's diary and gambling tickets which they claim were included with their 1980 tax return and that respondent subsequently lost such records. We have difficulty believing that this was the case. First, petitioners differed as to the description of the diary allegedly kept by Mr. Wagoner. He described it as a type that had pages which could be removed without tearing. Mrs. Wagoner described it differently; she stated the diary was of a spiral type which would result in torn pages on their removal. Neither was able to describe the appearance or size of the diary any further. Second, Mrs. Wagoner testified that she did not use the diary or gambling tickets in the preparation of petitioners' 1980 income tax return; she testified that she merely offset her husband's reported winnings by an equivalent amount of losses because she felt that he could not have won more than he lost. Finally, if such a diary and gambling tickets had been mailed to respondent's Ogden, Utah Service Center by petitioners, respondent's *667 usual administrative practice would have required that the documents filed with the return be forwarded to respondent's District office in Denver, Colorado for audit. The case file received in the Denver office did not contain a diary or gambling tickets. Petitioners have failed to prove the exact amount of their gambling losses for 1980. However, considering all the facts presented, we find that Mr. Wagoner had gambling losses in 1980 and that the amount of his gambling winnings in 1980 exceeded the amount of his gambling losses by $ 7,500 (i.e., his gambling losses for 1980 were $ 10,436). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Mr. Wagoner testified that substantially all of his wagering involved dog racing. ↩
2. Mrs. Wagoner testified that she borrowed in excess of $ 10,000 in order to obtain cash to cover living expenses; some of these funds were used by Mr. Wagoner for his gambling activities. ↩
3. Pursuant to section 6041, racetracks making a payment of $ 600 on a winning ticket (exclusive of the amount of the bet) are required to file an information return (Form W-2G) with the Internal Revenue Service indicating, among other items, the name, address and social security number of the winner and the date and amount of the payment. For purposes of identification, the person receiving payment must furnish to the track two types of identification verifying his name, address and social security number. Section 7.6041-1(c), Temporary Income Tax Regs., 42 Fed. Reg. 1471↩ (Jan. 7, 1977). If the payment exceeds $ 1,000 (exclusive of the amount of the bet), the track is required to withhold 20% of the amount of the winnings. Sec. 3402(q). 4. In a trifecta wager, the bettor must pick the animals finishing first, second and third in a race in the exact order of finish. ↩
5. Mr. Wagoner testified that he believed he lost $ 6,000-8,000 more than that reported on the return. ↩
6. Mrs. Wagoner stated she saw the diary and tickets and that they were placed with the return in an envelope which was mailed to respondent's Ogden Utah Service Center. ↩
7. All section references are to the Internal Revenue Code of 1954, as amended and in effect during 1980; all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
8. Mr. Wagoner testified that at times he received gambling winnings in amounts less than $ 600. Such winnings are not required to be reported on Form W-2G. Respondent did not seek to include these amounts in petitioners' income; we likewise decline to do so. ↩